**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **AARON MULVEY and** | § | |
| **CAROLYN MULVEY** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | |
| | § | |
| **LIQUID PROPERTY GROUP, LLC,** | § | **Civil Case No.:** |
| **JOHN MICHAEL TIFFIN, and** | § | **5:21-CV-01210-JKP-HJB** |
| **TINA ANDERSON,** | § | |
| *Defendants*. | § | |

<u>**DEFENDANT LIQUID PROPERTY GROUP, LLC'S MOTION FOR**</u>
<u>**SUMMARY JUDGMENT**</u>

TO THE HONORABLE JUDGE OF SAID COURT:

Defendants ask the Court to render summary judgment against plaintiffs, as authorized by Federal Rule of Civil Procedure 56, as to all of plaintiffs' causes of actions against Defendant Liquid Property Group, LLC and as to Defendant Liquid Property Group, LLC's counterclaim against plaintiffs.

## I.       BACKGROUND AND ADDITIONAL MATERIAL FACTS

1.       On or about September 7, 2021, Defendant Liquid Property Group, LLC (hereinafter "Defendant LPG") entered into a contract with Richard Villafana for the purchase of the real property located at 298 Champions Ridge, Spring Branch, Texas 78070 and better described as Lot 619, River Crossing, Unit Three, Comal County, Texas, according to the plat recorded in Volume 14, Pages 22-26, Map and Plat Records, Comal County, Texas (hereinafter the "Property"). *See* Exhibit A.

2.       On September 9, 2021, Richard Villafana delivered a "Seller's Property Disclosure" (hereinafter the "Seller's Disclosure") to Defendant LPG. Mr. Villafana answered "unk" to the question concerning water utilities on the Property. *See* Exhibit B.

3.       According to a certain Warranty Deed with Vendor's Lien recorded on July 1, 2002, under Clerk's Document No. 200206021873 in the Official Public Records of Comal County, Texas, Southerland/RCR Venture, LTD. conveyed the Property to Richard Villafana with a reservation unto the grantor of all "groundwater, being all underground water, percolating water, artesian water and other waters from any and all reservations, formations, depths and horizons beneath the surface of the earth, and any and all rights related thereto, in, on, under and that may be produced from the Property". *See* Exhibit C. This reservation did not include the right of ingress and egress in and to the surface relating to the reserved water rights. *Id*.

4.       Shortly thereafter, Defendant LPG had the Property listed on Zillow. The Zillow listing states in pertinent parts: (1) "public water [ ] needed"; (2) "[o]ut of state investor"; (3) "[b]uyer will be responsible to confirm utilities and any restrictions; (4) "I DO NOT GUARANTEE THE ACCURACY OF THE INFORMATION"; (5) "EACH BUYER IS RESPONSIBLE FOR DOING YOUR OWN HOMEWORK ON ALL THE FACTS AND FIGURES ON VACANT LAND AND THE LISTING AGENT IS TO BE HELD HARMLESS OF ANY DEFICIENCIES OR MISREPRESENTATIONS"; (6) "PLEASE BE SURE TO DO YOUR OWN HOMEWORK ON EACH LISTING AND MAKE SURE THE LAND SUITS YOUR NEEDS"; (7) "I MAKE IT MY POLICY TO PUT ALL KNOWN FACTS AND INFORMATION IN THE WRITE UP AS PROVIDED BY THE SELLERS AND THE COUNTY DATA". *See* Exhibit D.

5.       On September 22, 2021, Plaintiff Aaron Mulvey emailed the River Crossing Architectural Control Committee the following: "My name is Aaron Mulvey. My wife and I have a contract

pending on a property located within River Crossing. Specifically, we are in the process of purchasing a vacant lot located at 298 Champions Ridge, Spring Branch, TX 78070. According to the plats I've seen, the property is located within the 3rd addition to the River Crossing subdivision. Despite the restrictions, in place, the subsurface rights (specifically the water rights) are not being reserved in the conveyance and as such, I would like to drill a water well on the land in advance of building (and buying). I know that such restrictions are generally imposed for the prevention of drilling oil and gas wells and the disruption which ensues. I will not be drilling an oil and/or gas well. I can assure you that because the land is vacant, little, if any disruption will occur to other owner's in the subdivision. I will require no other access than from the front of the lot to accomplish my goal. Accordingly, I am requesting that an exception be granted to allow me to drill a water well at 298 Champions Ridge, Spring Branch, TX 78070. Best regards, Aaron Mulvey" *See* Exhibit L (emphasis added). On that same day, Rodney Young with the River Crossing Architectural Control Committee responded in pertinent part: "it's unusual for a Unit 3 lot to have water rights." *Id*. Plaintiffs were just two days into their option period, as the effective date of the contract was September 20, 2021. See Exhibit F.

6.     On October 5, 2021, Plaintiff Aaron Mulvey sent an email to Allegiance Title Company with Defendant LPG copied thereon that stated in pertinent part, "I went ahead and ran the title on this tract. It appears that the River Crossing Subdivision was developed in six parts. Parts one and two allow for the drilling of water wells. Part three, which is where this lot is located, does not." *See* Exhibit G. Plaintiffs were still in their option period.

7.     On October 8, 2021, Plaintiff Aaron Mulvey emailed the title company and stated, "I want to lodge objections over the water rights." *See* Exhibit H. Plaintiffs were still in their option period.

8.      On October 11, 2021, Plaintiff Aaron Mulvey emailed Allegiance Title Company and stated, "Based on the conversation Attorney Moore and I had on Friday [(October 8, 2021)]. She advised me that the attached contract only conveys what Liquid Property Group has and that the attached contract does NOT purport to convey water rights." *See* Exhibit I.

9.      On October 27, 2021, Allegiance Title Company emailed Plaintiff Aaron Mulvey and stated, "Would you like your attorney to prepare the Warranty Deed and we will forward to the seller for review." *See* Exhibit J. Plaintiff Aaron Mulvey responded, "No" and "Let's have the deed prepared first and see what happens" *Id*. (emphasis added). Plaintiff Aaron Mulvey for a second time objected to the title policy as it was written showing reservations of the groundwater. *Id*.

10.     On October 29, 2021, after Plaintiff Aaron Mulvey received a proposed Warranty Deed from and drafted by Allegiance Title, Plaintiff Aaron Mulvey stated, "Granted that I've sued Allegiance and the seller, I don't think that this transaction will be able to close on Monday". *See Exhibit O*.

## II.      ARGUMENTS AND AUTHORITIES

A.      *Plaintiffs waived their objections to defects, exceptions, or encumbrances to title by failing to terminate the contract.*

11.     According to paragraph 6, section D, of the Contract: "OBJECTIONS: Buyer may object in writing to (i) defects, exceptions, or encumbrances to title: disclosed on the survey other than items 6A(1) through (7) above; or disclosed in the Commitment other than items 6A(1) through (9) above[.] Buyer must object the earlier of (i) the Closing Date or (ii) 5 days after Buyer receives the Commitment, Exception Documents, and the survey. [. . .] Provided Seller is not obligated to incur any expense, Seller shall cure any timely objections of Buyer or any third-party lender within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be extended

as necessary. <u>If objections are not cured within the Cure Period, Buyer may, by delivering notice</u> <u>to Seller withing 5 days after the end of the Cure Period: (i) terminate this contract and the earnest</u> <u>money will be refunded to Buyer; or (ii) waive the objections. If Buyer does not terminate within</u> <u>the time required, Buyer shall be deemed to have waived the objections.</u>" *See* Exhibit F (emphasis added). According to paragraph 6, section D, subsection 7, the title policy is subject to "standard printed exceptions as to waters, tidelands, beaches, streams, and related matters." *See* Exhibit F.

12.     Plaintiff Aaron Mulvey made objections to the title commitment and its exception as to water rights on October 8, 2021, and October 27, 2021. *See* Exhibits H and J. According to the contract, Defendant LPG had fifteen (15) days to cure the objection. *See* Exhibit F. Defendant LPG did not cure the objections within the cure period (October 27, 2021 to November 11, 2021). When Defendant LPG failed to cure the title objections, plaintiffs, per the contract, were allowed five (5) days to terminate the contract. *Id*. When plaintiffs did not terminate the contract within five (5) days, they waived the objections. *See* Exhibit J. In fact, before the cure period was up and before closing could occur, Plaintiff/attorney Aaron Mulvey sued the defendants *pro se* in state court seeking specific performance. *See* Exhibit Q.

13.     Since the plaintiffs waived their objections to the exclusion of water rights from the title, it is plaintiffs, not Defendant LPG who breached the Contract by failing to close.

14.     As such, Defendant LPG is entitled to summary judgment on Defendant LPG's counterclaim for breach of contract against Plaintiffs because Defendant LPG tendered performance under the contract by attending the closing ready to convey the Property and plaintiffs breached the contract by failing to purchase the Property. Defendant LPG seeks specific performance of the contract as damages.

I. *Plaintiffs were permitted to make title objections and after the cure period, terminate the contract. By not doing so, they waived their prior objections.*

15.    Plaintiffs argue that they did not waive their title objections, because they were precluded from objecting to the lack of water rights in the title commitment as per paragraph 6, section D, of the contract. See ECF 43.

16.    Plaintiffs' argument that Paragraph 6(A)(7) precluded them from objecting to the lack of water rights does not prevent plaintiffs from objecting to exceptions in the deed tendered by the title company. It deals only with the title policy provisions. See Exhibit F. Furthermore, prohibition against objecting to the title policy refers only to "the standard printed exception as to waters, tidelands, beaches, streams, and related matters." The standard exceptions to title policies are those promulgated by the State Board of Insurance. They can be found at Form T-1, Owner's Policy of Title Insurance (texas.gov). The standard exception concerning water provides as follows:

> "4. Any titles or rights asserted by anyone, including but not limited to, persons, the public, corporations, governments or other entities, (a) to tidelands, or lands comprising the shores or beds of navigable or perennial rivers and streams, lakes, bays, gulfs or oceans, or (b) to lands beyond the line of the harbor or bulkhead lines as established or changed by any government, or (c) to filled-in lands, or artificial islands, or (d) to statutory water rights, including riparian rights, or (e) to the area extending from the line of mean low tide to the line of vegetation, or the right of access to that area or easement along and across that area."

Form T-1, Owner's Policy of Title Insurance (texas.gov). It has no application to a provision in a deed excluding common law water rights.

17.    Defendant LPG is entitled to summary judgment on Defendant LPG's counterclaim for breach of contract against plaintiffs because Defendant LPG tendered performance under the contract by attending the closing ready to convey the Property and plaintiffs breached the contract by failing to purchase the Property after their title objections were waived. Defendant LPG seeks specific performance of the contract as damages.

> B.    Arguing in the alternative, Defendant LPG is entitled to summary judgment on plaintiffs' claim for breach of contract and anticipatory breach of contract because it was, and remains, impossible for Defendant LPG to perform under the contract.

18.    Impossibility is a defense to a breach of contract claim. *Internacional Realty, Inc.* v. *2005 RP West, Ltd.*, 449 S.W.3d 512, 527 (Tex. App.–Houston [1st Dist.] 2014, pet. denied). Original impossibility excuses performance on a contract. See *Centex Corp.* v. *Dalton*, 840 S.W.2d 952, 954 (Tex. 1992); *Walden* v. *Affiliated Comput. Servs., Inc.*, 97 S.W.3d 303, 325 (Tex. App.–Houston [14th Dist.] 2003, pet. denied). Original impossibility is impossibility of performance that existed when the contract was entered into, so that the contract was to do something which from the outset was impossible. *Janak* v. *Fed. Deposit Ins. Corp.*, 586 S.W.2d 902, 906 (Tex. Civ. App. 1979). When a contracted item is unknown to either of the contracting parties, original objective impossibility of performance existed. *Id.* at 907. The *Janak* court even held that, "[n]o cases have come to our attention which enforced a contract against the defense of original objective impossibility." *Id*. (citing *Ellwood* v. *Nutex Oil Co.*, 148 S.W.2d 862 (Tex.Civ.App.-El Paso 1941, writ ref.); *United Sales Co.* v. *Curtis Peanut Co., Inc.*, 302 S.W.2d 763 (Tex.Civ.App.-Dallas 1957, writ ref. n. r. e.); *United States* v. *Texas Construction Co.*, 224 F.2d 289 (5th Cir. 1955)).

19.    It is undisputed that Defendant LPG does not possess water rights underlying the Property and did not know that they did not possess water rights until the plaintiffs noted the same. Exhibits K, M, and N. Plaintiffs also admit that they did not know the property lacked groundwater rights until they began doing their due diligence (Paragraph 6, Page 3, ECF 37).

20.    Consequently, plaintiffs' claims for breach of contract and anticipatory breach of contract are barred, in whole or part, because of Defendant LPG's performance under the contract is impossible due to circumstances which were unanticipated at the time of the execution of the

contract and which remain beyond the control of Defendant LPG. Simply put, is impossible for Defendant LPG to convey what it does not have.

21.     Accordingly, Defendant LPG is entitled to summary judgment on plaintiffs' claims for breach of contract and anticipatory breach of contract, because the parties are excused from performance under the contract due to impossibility.

> C.     *Defendants LPG is entitled to summary judgment on plaintiffs' claim for common law fraud because the plaintiffs cannot raise a material fact dispute as to the elements of intent to defraud and justifiable reliance.*

22.     Plaintiffs must prove the following essential elements to support a claim for common law fraud against Defendant LPG: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *Aquaplex, Inc.* v. *Rancho La Valencia*, Inc., 297 S.W.3d 768, 774 (Tex.2009). Because plaintiffs cannot raise a material fact dispute as to the elements of intent to defraud and justifiable reliance, Defendant LPG is entitled to summary judgment as a matter of law.

> I.     *Because plaintiffs cannot raise a material fact dispute on the elements of intent to defraud, Defendant LPG is entitled to summary judgment as a matter of law.*

23.     Understandably, intent to defraud is not susceptible to direct proof and must be proven by circumstantial evidence. *In re Lipsky*, 460 S.W.3d 579, 588 (Tex. 2015); *Youngkin* v. *Hines*, 524 S.W.3d 278, 283 (Tex. App.—Waco 2016), rev'd on other grounds, 546 S.W.3d 675 (Tex. 2018). Breach of a contract alone is not evidence that a party did not intend to perform. *Tony Gullo Motors I, L.P.* v. *Chapa*, 212 S.W.3d 299, 310 (Tex. 2006); *Youngkin*, 524 S.W.3d 278, 283. "[A] party's

intent is determined at the time the party made the representation, [but] it may be inferred from the party's subsequent acts after the representation is made." *Youngkin* at 283.

24.     Plaintiffs can muster no evidence exhibiting an intent to defraud. Defendants never advertised water rights and admitted to not knowing that the Property lacked water rights. The defendants made no subsequent acts after the alleged representation was made that would show an intent to defraud. In fact, plaintiffs were given every opportunity to walk away from the transaction and instead decided on filing suit *pro se* in both Dallas County and federal court.

25.     Because plaintiffs cannot raise a material fact dispute on the element of intent to defraud, Defendant LPG is entitled to summary judgment as a matter of law.

> II.  *Because plaintiffs cannot raise a material fact dispute on the element of justifiable reliance, Defendant LPG is entitled to summary judgment as a matter of law.*

26.     When a party fails to exercise such diligence, it is charged with knowledge of all facts that would have been discovered by a reasonably prudent person similarly situated. *JPMorgan Chase Bank, N.A.* v. *Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018); *AKB Hendrick, LP* v. *Musgrave Enters., Inc.*, 380 S.W.3d 221, 232 (Tex. App.–Dallas 2012, no pet.). To this end, that party cannot blindly rely on a representation by a defendant where the plaintiffs' knowledge, experience, and background warrant investigation into any representations before the plaintiffs act in reliance upon said representations. *JPMorgan Chase Bank, N.A.*, 546 S.W.3d 648, 653. Similarly, a person may not justifiably rely on a representation if there are "red flags" indicating such reliance is unwarranted. *Id.*; *Grant Thornton LLP* v. *Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010); *McGonagle* v. *Stewart Title Guar. Co.*, 432 S.W.3d 535, 541 (Tex. App.—Dallas 2014, pet. denied).

27.     A seller of real estate is under a duty to disclose material facts which would not be discoverable by the purchaser's exercise of ordinary care and diligence or which a reasonable

investigation and inquiry would not uncover. *Smith* v. *National Resort Communities, Inc.*, 585 S.W.2d 655, 658 (Tex. 1979); *Tukua Investments, LLC* v. *Spenst*, 413 S.W.3d 786, 801 (Tex. App.—El Paso 2013, pet. denied). However, a seller has no duty to disclose facts he does not know or that he should have known. *Prudential Ins. Co. of America* v. *Jefferson Associates, Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995); *Robinson* v. *Preston Chrysler-Plymouth, Inc.*, 633 S.W.2d 500, 502 (Tex. 1982); *Myre* v. *Meletio*, 307 S.W.3d 839, 843 (Tex. App.—Dallas 2010, pet. denied).

28.     The facts show that the Zillow listing provided numerous warnings about the standing and lack of knowledge of the defendants: (1) "public water [ ] needed"; (2) "[o]ut of state investor"; (3) "[b]uyer will be responsible to confirm utilities and any restrictions; (4) "I DO NOT GUARANTEE THE ACCURACY OF THE INFORMATION"; (5) "EACH BUYER IS RESPONSIBLE FOR DOING YOUR OWN HOMEWORK ON ALL THE FACTS AND FIGURES ON VACANT LAND AND THE LISTING AGENT IS TO BE HELD HARMLESS OF ANY DEFICIENCIES OR MISREPRESENTATIONS"; (6) "PLEASE BE SURE TO DO YOUR OWN HOMEWORK ON EACH LISTING AND MAKE SURE THE LAND SUITS YOUR NEEDS"; (7) "I MAKE IT MY POLICY TO PUT ALL KNOWN FACTS AND INFORMATION IN THE WRITE UP AS PROVIDED BY THE SELLERS AND THE COUNTY DATA". See Exhibit D.

29.     Plaintiffs are sophisticated attorneys represented by a seasoned realtor. Being in that superior position, they cannot now claim, in light of the Zillow listing and surrounding facts, that they justifiably relied on Defendant Anderson's alleged representations. The Zillow listing provided "red flags" indicating that reliance on any alleged statement by Defendant Anderson was unwarranted. Furthermore, plaintiffs' knowledge, experience, and background warranted an

investigation into any representations. Instead, plaintiffs failed to exercise such diligence and even

admitted that the status of the groundwater was a "knowable fact". Paragraph 29, Page 8, ECF 33.

30.     Because plaintiffs cannot raise a material fact dispute on the element of justifiable reliance,

Defendant LPG is entitled to summary judgment as a matter of law.

> D.     *Defendant LPG is entitled to Summary Judgment on plaintiffs' claim for statutory*
> *fraud because the plaintiffs cannot raise a material fact dispute as to the elements*
> *of, justifiable reliance and intent to defraud.*

31.     To prove statutory fraud in a real estate transaction, a plaintiff must show: (1) a false

representation of a past or existing material fact, when the false representation is made to a person

for the purpose of inducing the person to enter into a contract and relied on by that person in

entering into that contract; or (2) a false promise to do an act, when the false promise is material,

made with the intention of not fulfilling it, made to a person for the purpose of inducing that person

to enter into a contract, and relied on by that person in entering into that contract. Tex. Bus. &

Com. Code Ann. § 27.01(a); *Ferrara* v. *Nutt*, 555 S.W.3d 227, 236 (Tex. App.—Houston [1st

Dist.] 2018).

32.     For the same reasons as argued above, plaintiffs cannot raise a material fact dispute on

justifiable reliance and intent to defraud. Because plaintiffs cannot raise a material fact dispute on

the aforementioned elements, Defendant LPG is entitled to summary judgment as a matter of law.

> E.     *Defendant LPG is entitled to summary judgment on plaintiffs' claims for violations*
> *of the Texas Deceptive Trade Practices Act because the plaintiffs cannot raise a*
> *material fact dispute as to any alleged violations of Defendant LPG.*

33.     Plaintiff must prove the following essential elements to support a claim under the Texas

Deceptive Trade Practices Act against the defendants: (1) the plaintiffs must be a consumer; (2)

Defendant Anderson must have engaged in: (A) false, misleading, or deceptive acts; (B) breach of

an express or implied warranty; (C) an unconscionable act or course of action; or (D) an act or

practice which violates Chapter 541 of the Texas Insurance Code; and (3) Defendant Anderson's alleged acts must have been the "producing cause" of the plaintiffs damages. *Doe* v. *Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472 (Tex. 1995); Tex. Bus. & Com. Code § 17.50(a); *Williamson* v. *Howard*, 554 S.W.3d 59, 70 (Tex. App.—El Paso 2018); *U.S. Tire-Tech, Inc.* v. *Boeran, B.V.*, 110 S.W.3d 194, 197, 50 U.C.C. Rep. Serv. 2d 780 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (breach of an express warranty); *Church & Dwight Co., Inc.* v. *Huey*, 961 S.W.2d 560 (Tex. App.—San Antonio 1997, pet. denied) (breach of an express or implied warranty); *Hennessey* v. *Vanguard Ins. Co.*, 895 S.W.2d 794 (Tex. App.—Amarillo 1995, writ denied) (unconscionable act or course of action). *Alexander* v. *Turtur & Associates, Inc.*, 146 S.W.3d 113, 117 (Tex. 2004); *B & W Supply, Inc.* v. *Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *Palmer* v. *Espey Huston & Associates, Inc.*, 84 S.W.3d 345, 355, 49 U.C.C. Rep. Serv. 2d 48 (Tex. App.—Corpus Christi 2002, pet. denied).  In maintaining their DTPA claims, plaintiffs allege violations of the following laundry-list provisions as well as violation of Texas Property Code § 5.086: (b)(1), (2), (3), (5), (9), (12), (24).

34.     All of plaintiffs' DTPA claims stem from two alleged wrongful acts. See ECF 33. Namely, plaintiffs allege that all defendants are in breach of the DTPA for: (1) failing to disclose that Defendant LPG and Defendant Tiffin did not have legal title to the real property; and (2) misrepresenting that Defendant LPG and Defendant Tiffin owned water rights and that plaintiff could dig a well on the property. *Id*. Plaintiffs provide no evidence to prove that Defendant Anderson made these statements. In fact, plaintiffs originally claimed that Defendant Anderson told Plaintiff Aaron Mulvey that he "could dig a well" before he contracted for the property. Paragraphs 2-3, Pages 1-2, ECF 16. Now he claims that Defendant Anderson "assured [him]" after

he signed the contract and just before closing. Plaintiffs have been inconsistent at best and deceitful at worst.

> I.    *Defendant LPG is entitled to summary judgment on plaintiffs' claims for violations of the Texas Deceptive Trade Practices Act because Defendant LPG is not required to give an equitable interest disclosure in a non-executory, typical real estate contract.*

35.    Plaintiffs' Motion for Summary Judgment relies heavily on an alleged breach by defendants of Section 5.085 and Section 5.086 of the Texas Property Code, both of which plaintiffs claim also constitute violations of the Texas Deceptive Trade Practices – Consumer Protection Act.  Both Section 5.085 and Section 5.086 are part of Subchapter D of Chapter 5 of the Texas Property Code. Subchapter D (hereinafter the "Chapter") deals with "executory contracts for conveyance", also known as "contracts for deed."

36.    An executory contract, or a "contract for deed," is a real-estate transaction that allows the seller of the property to retain title until the purchaser has paid for the property in full. *Flores* v. *Millennium Interests, Ltd.*, 185 S.W.3d 427, 429 (Tex. 2005); *Bryant* v. *Cady*, 445 S.W.3d 815, 819, 822-23 (Tex. App.—Texarkana 2014, no pet.)("In a typical real estate contract, the seller and purchaser mutually agree to complete payment and title transfer on a date certain, the closing date, at which time the purchaser generally obtains both title and possession. By contrast, in an executory contract, the purchaser is usually given immediate possession, but is required to satisfy numerous obligations over an extended period of time before the seller has an obligation to transfer actual title. [¶] Under an executory contract, the buyer has the right, but no obligation, to complete the purchase…. But, in a typical real estate contract, the buyer must complete the purchase").

37.    The Chapter governs transactions in which a seller sells property under an executory contract to a buyer, whereby the buyer makes periodic payments and receives a deed only after all

payments have been made.  The Chapter expressly excludes transactions such as this one.  Section 5.062(c) says:

> "This subchapter does not apply to an executory contract that provides for the delivery of a deed from the seller to the purchaser within 180 days of the date of the final execution of the executory contract." Tex. Prop. Code.

38.    Here, the contract was effective September 20, 2021, the "Effective Date", being the date of final acceptance by both parties. See Exhibit F. The contract required a closing just 42 days later, on or before November 1, 2021.  It also required the seller to execute and deliver a general warranty deed conveying title to the property to buyer. See Exhibit F.  This transaction does not contemplate an executory contract of conveyance, and neither Section 5.085 or Section 5.086 have any applicability to this transaction.

39.    Defendant LPG is entitled to summary judgment on plaintiffs' claims for violations of the Texas Deceptive Trade Practices Act because the defendants are not required to give an equitable interest disclosure in a non-executory, typical real estate contract.

> II.    *Defendant LPG is entitled to summary judgment on plaintiffs' claims for violations of the Texas Deceptive Trade Practices Act because the defendants' alleged actions or omissions were not a producing cause of plaintiffs' injuries.*

40.    Causation is a necessary element of a claim under the DTPA, and the proper causation standard is "producing cause." *Metro Allied Ins. Agency, Inc*. v. *Lin*, 304 S.W.3d 830, 834 (Tex. 2009). Thus, a plaintiff must show that the defendant's malfeasance was the "producing cause" of the injuries sustained. *Id*. A "producing cause" requires that acts be both the cause-in-fact and a substantial factor in causing injuries and, thus, refers to an efficient, exciting, or contributing cause which, in the natural sequence of events, produces injuries or damages. *Id*. Deceptive actions must have been a substantial factor in bringing about the plaintiffs' injuries in order to be considered a "producing cause" for DTPA purposes. *Id*. The first component of producing-cause analysis is a

purely fact-based examination, considering whether, but for the defendant's conduct, the plaintiff's injuries would not have occurred. See *Prudential Ins. Co.*, 896 S.W.2d 156, 161 (Tex.1995). Under the DTPA, a defendant's acts cannot be the producing cause of a plaintiff's injuries unless the injuries flowed from the defendant's misconduct in connection with a consumer transaction. The producing-cause analysis further includes an inquiry into whether the defendants' conduct was the "legal cause" of the plaintiffs' injuries; that is, whether it was such a substantial factor in causing the plaintiffs' injuries that liability should be imposed. See *Prudential*, 896 S.W.2d at 161. See generally *Union Pump Co.* v. *Allbritton*, 898 S.W.2d 773, 779–84 (Tex.1995) (Cornyn, J., concurring). Policy-based considerations and "common-sense notions of responsibility" should guide the determination of whether the causal connection between the defendant's acts and the plaintiffs' injuries merits the imposition of DTPA liability. *Amstadt* v. *U.S. Brass Corp.*, 919 S.W.2d 644, 655 (Tex. 1996) (citing William Powers, Jr., Texas Products Liability Law § 6.022, at 6–4, 6–20 (2d ed. 1992) (emphasis added).

41.     The facts demonstrate that the defendants never advised or advertised to the plaintiffs that they were conveying water rights or that plaintiffs could dig a well on the Property. See Exhibits K, M, and N. Defendant LPG had the Property listed on Zillow and the listing disclosed that "public water [was] needed" and that each buyer would be responsible for "doing your own homework on all facts" and confirming utilities and restrictions. See Exhibit D. The Zillow listing further advised that there was no guarantee as to the accuracy of information and that all "known facts and information [in the listing] would be provided by the seller [(Richard Villafana)] and the county data". *Id*. Plaintiff Mulvey researched the title history of the Property before entering into the Contract with Defendant LPG, and was aware of the reservation as to water rights. See Exhibits E, G, and L. On September 22, 2021, Plaintiff Aaron Mulvey emailed the property owners

association. See Exhibit L. In that email, Plaintiff Aaron Mulvey didn't state that he was told he was being conveyed water rights, but rather that his interpretation of the Contract was that the "water rights" were "not being reserved" and thus being conveyed to Plaintiff Aaron Mulvey. *Id*. The facts further demonstrate that Defendant LPG had the Property listed on Zillow and that the listing disclosed that the seller was an "[o]ut of state investor" (it is undisputed that Defendant LPG is a Delaware incorporated limited liability company, headquartered in Florida). See Exhibit D. On September 15, 2021, Defendant Anderson spoke to plaintiffs appointed agent and real estate broker Ric Shanahan and informed him that Defendant LPG was not currently the owner of record, and that LPG was in the process of completing the purchase from the owner of record. *See* Exhibit K. Defendant Anderson also informed Ric Shanahan that the transaction between Defendant LPG and Richard Villafana was not an assignment, but an option to purchase, and that Defendant LPG buys and sells the property and pay closing costs twice. *Id*. Because of this conversation, Ric Shanahan prepared the contract to name "Liquid Property Group LLC" as the seller on the contract. See Exhibit F. Plaintiff Aaron Mulvey texted Defendant Anderson on September 21, 2021 acknowledging his receipt of a copy of the contract with Defendant LPG named as the seller, even though facts show that Plaintiff Mulvey had begun researching the Property beforehand. See Exhibit E.

42.     Even if Defendant Anderson had stated that plaintiffs could "dig a well", such statement is too remotely connected with the plaintiffs' injury to constitute legal causation. By Plaintiff Aaron Mulvey's own admission, his interpretation of the Contract was that the "water rights" were "not being reserved" and thus being conveyed to Plaintiff Aaron Mulvey. *See* Exhibit L. Plaintiff Aaron Mulvey would have moved to Bulverde, Texas based on his own interpretation of the contract and not Defendant Anderson's alleged remarks about digging a well. Plaintiffs failed in their

responsibility to do due diligence, moved their family to Bulverde, Texas, waived their objections to the title defects, and then sued the defendants.

43.    As such, Defendant LPG is entitled to summary judgment on plaintiffs' claims for violations of the Texas Deceptive Trade Practices Act because the defendants' alleged actions or omissions were not a producing cause of plaintiffs' injuries.

> ### III.    *Defendant LPG is entitled to summary judgment on Plaintiffs' claims for violations of the Texas Deceptive Trade Practices Act because the defendants' alleged actions or omissions are not actionable under the Act.*

44.    A mere breach of contract is not actionable under the DTPA. *Crawford* v. *Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex.1996). In distinguishing between a mere breach of contract claim and a DTPA violation, the distinction properly lies when an alternative interpretation of the contract is asserted, and the dispute arises out of the performance of the contract. *Munawar* v. *Cadle Co.*, 2 S.W.3d 12, 18–19 (Tex. App. 1999) (citing *Quitta* v. *Fossati*, 808 S.W.2d 636, 644 (Tex.App.— Corpus Christi 1991, writ denied).

45.    Plaintiffs' legal claims are governed by traditional contract principles, as plaintiffs are clearly relying on their interpretation of the contract and defendants' representation that they were relying on information provided by Richard Villafana. Any alleged prior inconsistent or contemporaneous verbal agreements are barred by the statute of frauds and the parol evidence rule.

46.    In such a case as this, defendants have not violated the DTPA and the legal rights of the parties are governed by traditional contract principles. Defendant LPG is entitled to summary judgment on plaintiffs' claims for violations of the Texas Deceptive Trade Practices Act because the defendants' alleged actions or omissions are not actionable under the Act.

> ### F.    *Defendant LPG is entitled to summary judgment on plaintiffs' claims for negligent misrepresentation because the plaintiffs cannot raise a material fact dispute as to the elements of justifiable reliance.*

47.     Plaintiff must prove the following essential elements to support a claim for negligent misrepresentation against Defendant LPG: "(1) representation in the course of its business or in a transaction in which it has a pecuniary interest; (2) supplying of false information for the guidance of others in their business; and (3) failure to exercise reasonable care or competence in obtaining or communicating that information, and a pecuniary loss sustained due to justifiable reliance on the representation." *JPMorgan Chase Bank, N.A.* v. *Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018). Because plaintiff cannot raise a material fact dispute on the element of justifiable reliance, defendant is entitled to summary judgment as a matter of law.

48.     Plaintiffs are sophisticated attorneys represented by a seasoned realtor. Being in that superior  position, they cannot now claim, in light of the Zillow listing and surrounding facts, that they justifiably relied on Defendant Anderson's alleged representations. The Zillow listing provided "red flags" indicating that reliance on any alleged statement by Defendant Anderson was unwarranted. Furthermore, plaintiffs' knowledge, experience, and background warranted an investigation into any representations. Instead, plaintiffs failed to exercise such diligence and even admitted that the status of the groundwater was a "knowable fact". Paragraph 29, Page 8, ECF 33.

49.     Because plaintiffs cannot raise a material fact dispute on the element of justifiable reliance, Defendant LPG is entitled to summary judgment as a matter of law.

### III.     ATTORNEY FEES

50.     Defendant LPG is entitled to attorney fees incurred in defending this suit. Exhibit F, ¶ 17. The affidavit of defendants' attorney will be delivered at a later time to establish the amount that Defendant LPG is entitled to attorney fees as a matter of law.

### IV.     CONCLUSION

51.     Plaintiffs can procure no evidence that Defendant LPG violated the Texas Deceptive Trade Practices Act, committed fraud or negligent misrepresentation, or breached the contract. In fact, Defendant LPG is entitled to summary judgment on Defendant LPG's counterclaim for breach of contract against plaintiffs because Defendant LPG tendered performance under the contract and plaintiffs breached the contract by failing to perform.

**V.      PRAYER**

52.     For these reasons, Defendant LPG asks the Court to grant this motion for summary judgment, deny plaintiffs' claims, grant Defendant LPG summary judgment on its claim for breach of contract, enforce the contract, and award Defendant LPG with its reasonable and necessary attorney fees in defending this case.

Respectfully submitted,

Jones Property Law, PLLC
1910 Pacific Avenue, Suite 6030
Dallas, Texas   75201
Telephone: (214) 932-9106

By:   /s/ Dakota J. Wrinkle
Dakota J. Wrinkle
State Bar No. 24118592
dakota@jonespropertylaw.com
Attorney for Defendants

Bayne, Snell & Krause
1250 N.E. Loop 410, Suite 725
San Antonio, Texas   78209
Telephone: (210) 824-3278
Telecopier: (210) 824-3937

By:   /s/ Barry Snell
Barry Snell
State Bar No. 1878900
bsnell@bsklaw.com
Attorney for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

Ryan C. Reed
**Pulman, Cappuccio & Pullen, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213

Furthermore, I have served a true and correct copy of this motion upon each attorney on this day by email.

Respectfully submitted,

Dakota J. Wrinkle