UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| AARON MULVEY and § | |
| CAROLYN MULVEY § | |
| *Plaintiffs*, § | |
| § | |
| v. § | |
| § | |
| LIQUID PROPERTY GROUP, LLC, § | Civil Case No.: |
| JOHN MICHAEL TIFFIN, and § | 5:21-CV-01210-JKP-HJB |
| TINA ANDERSON, § | |
| *Defendants*. § | |

**DEFENDANT TINA ANDERSON'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Tina Anderson ask the Court to render summary judgment against plaintiffs, as authorized by Federal Rule of Civil Procedure 56, as to all of plaintiffs' causes of actions against Defendant Tina Anderson.

**I.   BACKGROUND AND ADDITIONAL MATERIAL FACTS**

1.   On or about September 7, 2021, Defendant Liquid Property Group, LLC (hereinafter "Defendant LPG") entered into a contract with Richard Villafana for the purchase of the real property located at 298 Champions Ridge, Spring Branch, Texas 78070 and better described as Lot 619, River Crossing, Unit Three, Comal County, Texas, according to the plat recorded in Volume 14, Pages 22-26, Map and Plat Records, Comal County, Texas (hereinafter the "Property"). *See* Exhibit A.

2.   On September 9, 2021, Richard Villafana delivered a "Seller's Property Disclosure" (hereinafter the "Seller's Disclosure") to Defendant LPG. Mr. Villafana answered "unk" to the question concerning water utilities on the Property. *See* Exhibit B.

3.      According to a certain Warranty Deed with Vendor's Lien recorded on July 1, 2002, under Clerk's Document No. 200206021873 in the Official Public Records of Comal County, Texas, Southerland/RCR Venture, LTD. conveyed the Property to Richard Villafana with a reservation unto the grantor of all "groundwater, being all underground water, percolating water, artesian water and other waters from any and all reservations, formations, depths and horizons beneath the surface of the earth, and any and all rights related thereto, in, on, under and that may be produced from the Property". *See* Exhibit C. This reservation did not include the right of ingress and egress in and to the surface relating to the reserved water rights. *Id*.

4.      Shortly thereafter, Defendant LPG had the Property listed on Zillow. The Zillow listing states in pertinent parts: (1) "public water [ ] needed"; (2) "[o]ut of state investor"; (3) "[b]uyer will be responsible to confirm utilities and any restrictions; (4) "I DO NOT GUARANTEE THE ACCURACY OF THE INFORMATION"; (5) "EACH BUYER IS RESPONSIBLE FOR DOING YOUR OWN HOMEWORK ON ALL THE FACTS AND FIGURES ON VACANT LAND AND THE LISTING AGENT IS TO BE HELD HARMLESS OF ANY DEFICIENCIES OR MISREPRESENTATIONS"; (6) "PLEASE BE SURE TO DO YOUR OWN HOMEWORK ON EACH LISTING AND MAKE SURE THE LAND SUITS YOUR NEEDS"; (7) "I MAKE IT MY POLICY TO PUT ALL KNOWN FACTS AND INFORMATION IN THE WRITE UP AS PROVIDED BY THE SELLERS AND THE COUNTY DATA". *See* Exhibit D.

5.      On September 22, 2021, Plaintiff Aaron Mulvey emailed the River Crossing Architectural Control Committee the following: "My name is Aaron Mulvey. My wife and I have a contract pending on a property located within River Crossing. Specifically, we are in the process of purchasing a vacant lot located at 298 Champions Ridge, Spring Branch, TX 78070. According to the plats I've seen, the property is located within the 3rd addition to the River Crossing subdivision.

<u>Despite the restrictions, in place, the subsurface rights (specifically the water rights) are not being reserved in the conveyance and as such, I would like to drill a water well on the land in advance of building (and buying).</u> I know that such restrictions are generally imposed for the prevention of drilling oil and gas wells and the disruption which ensues. I will not be drilling an oil and/or gas well. I can assure you that because the land is vacant, little, if any disruption will occur to other owner's in the subdivision. I will require no other access than from the front of the lot to accomplish my goal. Accordingly, I am requesting that an exception be granted to allow me to drill a water well at 298 Champions Ridge, Spring Branch, TX 78070. Best regards, Aaron Mulvey" *See* Exhibit L (emphasis added). On that same day, Rodney Young with the River Crossing Architectural Control Committee responded in pertinent part: "it's unusual for a Unit 3 lot to have water rights." *Id*. Plaintiffs were just two days into their option period, as the effective date of the contract was September 20, 2021. See Exhibit F.

6.     On October 5, 2021, Plaintiff Aaron Mulvey sent an email to Allegiance Title Company with Defendant LPG copied thereon that stated in pertinent part, "I went ahead and ran the title on this tract. It appears that the River Crossing Subdivision was developed in six parts. Parts one and two allow for the drilling of water wells. Part three, which is where this lot is located, does not." *See* Exhibit G. Plaintiffs were still in their option period.

7.     On October 8, 2021, Plaintiff Aaron Mulvey emailed the title company and stated, "I want to lodge objections over the water rights." *See* Exhibit H. Plaintiffs were still in their option period.

8.     On October 11, 2021, Plaintiff Aaron Mulvey emailed Allegiance Title Company and stated, "Based on the conversation Attorney Moore and I had on Friday [(October 8, 2021)]. She advised me that the attached contract only conveys what Liquid Property Group has and that the attached contract does NOT purport to convey water rights." *See* Exhibit I.

9. On October 27, 2021, Allegiance Title Company emailed Plaintiff Aaron Mulvey and stated, "Would you like your attorney to prepare the Warranty Deed and we will forward to the seller for review." *See* Exhibit J. Plaintiff Aaron Mulvey responded, "No" and "Let's have the deed prepared first and <u>see what happens</u>" *Id*. (emphasis added). Plaintiff Aaron Mulvey for a second time objected to the title policy as it was written showing reservations of the groundwater. *Id*.

10. On October 29, 2021, after Plaintiff Aaron Mulvey received a proposed Warranty Deed from and drafted by Allegiance Title, Plaintiff Aaron Mulvey stated, "Granted that I've sued Allegiance and the seller, I don't think that this transaction will be able to close on Monday". *See* Exhibit O.

## II.   ARGUMENTS AND AUTHORITIES

11. Summary judgment is proper in a case in which there is no genuine dispute of material fact. Fed. R. Civ. P. 56(a); *Scott* v. *Harris*, 550 U.S. 372, 380 (2007); *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *Perez* v. *Lorraine Enters., Inc.*, 769 F.3d 23, 29–30 (1st Cir. 2014). A defendant who seeks summary judgment on a plaintiff's claim must demonstrate the absence of a genuine dispute of material fact by either (1) submitting summary-judgment evidence that negates the existence of a material element of the plaintiff's claim or (2) showing there is no evidence to support an essential element of the plaintiff's claim. *See Celotex Corp.*, 477 U.S. at 322–23; *Modrowski* v. *Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013). A movant seeking a no-evidence summary judgment need only identify one or more essential elements of a claim as to which there is no evidence, and the burden then shifts to the nonmovant to produce summary judgment evidence raising a genuine issue of material fact. *B.C.* v. *Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 259 (Tex. 2020).

     A.     *Defendants Tina Anderson is entitled to summary judgment on plaintiffs' causes of actions because Defendant Tina Anderson is not individually liable to plaintiffs.*

12.     Under Texas law, corporate entities are necessarily run by individuals serving as their agents. *Fields* v. *State*, No. 11-07-00095-CR, 2008 WL 4356367, at *1 (Tex. App.—Eastland 2008, no pet.) (citing *Johnson* v. *State*, 606 S.W.2d 894, 895 (Tex. Crim. App. 1980). In fact, a corporation can act only through human agents. See *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 762 (Tex. 2006) (orig. proceeding) (per curiam) (citing *Holloway* v. *Skinner*, 898 S.W.2d 793, 795 (Tex. 1995)). As a general rule, "the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts." *Holloway* v. *Skinner*, 898 S.W.2d 793, 795 (Tex. 1995). For Defendant Anderson to be individually liable for her alleged statements to plaintiffs, more is required.

13.     Plaintiffs have failed to procure any evidence of a direct personal benefit to Defendant Anderson by her alleged misrepresentations. Instead, plaintiffs, through artful pleading, have attempted to recast contract claims as tort claims. *Mem'l Hermann Healthcare Sys., Inc.* v. *Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008) Tort claims are generally barred when no factual basis for the tort claim would exist had a party complied with a contract. *Exxon Mobil Corp.* v. *Kinder Morgan Operating L.P.*, 192 S.W.3d 120, 128 (Tex. App.—Houston [14th Dist.] 2006)). As such, Defendant Tina Anderson is entitled to summary judgment on plaintiffs' causes of actions because Defendant Tina Anderson is not individually liable to plaintiffs for claims.

     B.     *Defendant Anderson is entitled to summary judgment on plaintiffs' claim for common law fraud because the plaintiffs cannot raise a material fact dispute as to the elements of intent to defraud and justifiable reliance.*

14.     A fraud plaintiff cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or

investigation. *Chico Auto Parts & Serv., Inc.* v. *Crockett*, 512 S.W.3d 560 (Tex. App. 2017). Plaintiffs must prove the following essential elements to support a claim for common law fraud against Defendant LPG: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *Aquaplex, Inc.* v. *Rancho La Valencia*, Inc., 297 S.W.3d 768, 774 (Tex.2009). Because plaintiffs cannot raise a material fact dispute as to the elements of intent to defraud and justifiable reliance, Defendant Tina Anderson is entitled to summary judgment as a matter of law.

> I. Because plaintiffs cannot raise a material fact dispute on the elements of intent to defraud, Defendant Tiffin is entitled to summary judgment as a matter of law.

15.   Understandably, intent to defraud is not susceptible to direct proof and must be proven by circumstantial evidence. *In re Lipsky*, 460 S.W.3d 579, 588 (Tex. 2015); *Youngkin* v. *Hines*, 524 S.W.3d 278, 283 (Tex. App.—Waco 2016), rev'd on other grounds, 546 S.W.3d 675 (Tex. 2018). Breach of a contract alone is not evidence that a party did not intend to perform. *Tony Gullo Motors I, L.P.* v. *Chapa*, 212 S.W.3d 299, 310 (Tex. 2006); *Youngkin*, 524 S.W.3d 278, 283. "[A] party's intent is determined at the time the party made the representation, [but] it may be inferred from the party's subsequent acts after the representation is made." *Youngkin* at 283.

16.   Plaintiffs can muster no evidence exhibiting an intent to defraud. Defendants never advertised water rights and admitted to not knowing that the Property lacked water rights. The defendants made no subsequent acts after the alleged representation was made that would show an intent to defraud. In fact, plaintiffs were given every opportunity to walk away from the transaction and instead decided on filing suit *pro se* in both Dallas County and federal court.

17. Because plaintiffs cannot raise a material fact dispute on the element of intent to defraud, Defendant Anderson is entitled to summary judgment as a matter of law.

> II. Because plaintiffs cannot raise a material fact dispute on the element of justifiable reliance, Defendant Tiffin is entitled to summary judgment as a matter of law.

18. When a party fails to exercise such diligence, it is charged with knowledge of all facts that would have been discovered by a reasonably prudent person similarly situated. *JPMorgan Chase Bank, N.A.* v. *Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018); *AKB Hendrick, LP* v. *Musgrave Enters., Inc.*, 380 S.W.3d 221, 232 (Tex. App.–Dallas 2012, no pet.). To this end, that party cannot blindly rely on a representation by a defendant where the plaintiffs' knowledge, experience, and background warrant investigation into any representations before the plaintiffs act in reliance upon said representations. *JPMorgan Chase Bank, N.A.,* 546 S.W.3d 648, 653. Similarly, a person may not justifiably rely on a representation if there are "red flags" indicating such reliance is unwarranted. *Id.*; *Grant Thornton LLP* v. *Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010); *McGonagle* v. *Stewart Title Guar. Co.*, 432 S.W.3d 535, 541 (Tex. App.—Dallas 2014, pet. denied).

19. A seller of real estate is under a duty to disclose material facts which would not be discoverable by the purchaser's exercise of ordinary care and diligence or which a reasonable investigation and inquiry would not uncover. *Smith* v. *National Resort Communities, Inc.*, 585 S.W.2d 655, 658 (Tex. 1979); *Tukua Investments, LLC* v. *Spenst*, 413 S.W.3d 786, 801 (Tex. App.—El Paso 2013, pet. denied). However, a seller has no duty to disclose facts he does not know or that he should have known. *Prudential Ins. Co. of America* v. *Jefferson Associates, Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995); *Robinson* v. *Preston Chrysler-Plymouth, Inc.*, 633 S.W.2d 500, 502 (Tex. 1982); *Myre* v. *Meletio*, 307 S.W.3d 839, 843 (Tex. App.—Dallas 2010, pet. denied).

20. The facts show that the Zillow listing provided numerous warnings about the standing and lack of knowledge of the defendants: (1) "public water [ ] needed"; (2) "[o]ut of state investor"; (3) "[b]uyer will be responsible to confirm utilities and any restrictions; (4) "I DO NOT GUARANTEE THE ACCURACY OF THE INFORMATION"; (5) "EACH BUYER IS RESPONSIBLE FOR DOING YOUR OWN HOMEWORK ON ALL THE FACTS AND FIGURES ON VACANT LAND AND THE LISTING AGENT IS TO BE HELD HARMLESS OF ANY DEFICIENCIES OR MISREPRESENTATIONS"; (6) "PLEASE BE SURE TO DO YOUR OWN HOMEWORK ON EACH LISTING AND MAKE SURE THE LAND SUITS YOUR NEEDS"; (7) "I MAKE IT MY POLICY TO PUT ALL KNOWN FACTS AND INFORMATION IN THE WRITE UP AS PROVIDED BY THE SELLERS AND THE COUNTY DATA". See Exhibit D.

21. Plaintiffs are sophisticated attorneys represented by a seasoned realtor. Being in that superior position, they cannot now claim, in light of the Zillow listing and surrounding facts, that they justifiably relied on Defendant Anderson's alleged representations. The Zillow listing provided "red flags" indicating that reliance on any alleged statement by Defendant Anderson was unwarranted. Furthermore, plaintiffs' knowledge, experience, and background warranted an investigation into any representations. Instead, plaintiffs failed to exercise such diligence and even admitted that the status of the groundwater was a "knowable fact". Paragraph 29, Page 8, ECF 33.

22. Because plaintiffs cannot raise a material fact dispute on the element of justifiable reliance, Defendant Anderson is entitled to summary judgment as a matter of law.

> C. *Defendant Anderson is entitled to summary judgment on plaintiffs' claims for violations of the Texas Deceptive Trade Practices Act because the plaintiffs cannot raise a material fact dispute as to any alleged violations of Defendant Anderson.*

23.     Plaintiff must prove the following essential elements to support a claim under the Texas Deceptive Trade Practices Act against the defendants: (1) the plaintiffs must be a consumer; (2) Defendant Anderson must have engaged in: (A) false, misleading, or deceptive acts; (B) breach of an express or implied warranty; (C) an unconscionable act or course of action; or (D) an act or practice which violates Chapter 541 of the Texas Insurance Code; and (3) Defendant Anderson's alleged acts must have been the "producing cause" of the plaintiffs damages. *Doe* v. *Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472 (Tex. 1995); Tex. Bus. & Com. Code § 17.50(a); *Williamson* v. *Howard*, 554 S.W.3d 59, 70 (Tex. App.—El Paso 2018); *U.S. Tire-Tech, Inc.* v. *Boeran, B.V.*, 110 S.W.3d 194, 197, 50 U.C.C. Rep. Serv. 2d 780 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (breach of an express warranty); *Church & Dwight Co., Inc.* v. *Huey*, 961 S.W.2d 560 (Tex. App.—San Antonio 1997, pet. denied) (breach of an express or implied warranty); *Hennessey* v. *Vanguard Ins. Co.*, 895 S.W.2d 794 (Tex. App.—Amarillo 1995, writ denied) (unconscionable act or course of action). *Alexander* v. *Turtur & Associates, Inc.*, 146 S.W.3d 113, 117 (Tex. 2004); *B & W Supply, Inc.* v. *Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *Palmer* v. *Espey Huston & Associates, Inc.*, 84 S.W.3d 345, 355, 49 U.C.C. Rep. Serv. 2d 48 (Tex. App.—Corpus Christi 2002, pet. denied).  In maintaining their DTPA claims, plaintiffs allege violations of the following laundry-list provisions as well as violation of Texas Property Code § 5.086: (b)(1), (2), (3), (5), (9), (12), (24).

24.     All of plaintiffs' DTPA claims stem from two alleged wrongful acts. See ECF 33. Namely, plaintiffs allege that all defendants are in breach of the DTPA for: (1) failing to disclose that Defendant LPG and Defendant Tiffin did not have legal title to the real property; and (2) misrepresenting that Defendant LPG and Defendant Tiffin owned water rights and that plaintiff could dig a well on the property. *Id*. Plaintiffs provide no evidence to prove that Defendant

Anderson made these statements. In fact, plaintiffs originally claimed that Defendant Anderson told Plaintiff Aaron Mulvey that he "could dig a well" before he contracted for the property. Paragraphs 2-3, Pages 1-2, ECF 16. Now he claims that Defendant Anderson "assured [him]" after he signed the contract and just before closing. Plaintiffs have been inconsistent at best and deceitful at worst.

> I. *Defendant Anderson is entitled to summary judgment on plaintiffs' claims for violations of the Texas Deceptive Trade Practices Act because Defendant Anderson is not required to give an equitable interest disclosure in a non-executory, typical real estate contract.*

25. Plaintiffs' Motion for Summary Judgment relies heavily on an alleged breach by defendants of Section 5.085 and Section 5.086 of the Texas Property Code, both of which plaintiffs claim also constitute violations of the Texas Deceptive Trade Practices – Consumer Protection Act. Both Section 5.085 and Section 5.086 are part of Subchapter D of Chapter 5 of the Texas Property Code. Subchapter D (hereinafter the "Chapter") deals with "executory contracts for conveyance", also known as "contracts for deed."

26. An executory contract, or a "contract for deed," is a real-estate transaction that allows the seller of the property to retain title until the purchaser has paid for the property in full. *Flores* v. *Millennium Interests, Ltd.*, 185 S.W.3d 427, 429 (Tex. 2005); *Bryant* v. *Cady*, 445 S.W.3d 815, 819, 822-23 (Tex. App.—Texarkana 2014, no pet.)("In a typical real estate contract, the seller and purchaser mutually agree to complete payment and title transfer on a date certain, the closing date, at which time the purchaser generally obtains both title and possession. By contrast, in an executory contract, the purchaser is usually given immediate possession, but is required to satisfy numerous obligations over an extended period of time before the seller has an obligation to transfer actual title. [¶] Under an executory contract, the buyer has the right, but no obligation, to complete the purchase…. But, in a typical real estate contract, the buyer must complete the purchase").

27. The Chapter governs transactions in which a seller sells property under an executory contract to a buyer, whereby the buyer makes periodic payments and receives a deed only after all payments have been made. The Chapter expressly excludes transactions such as this one. Section 5.062(c) says:

> "This subchapter does not apply to an executory contract that provides for the delivery of a deed from the seller to the purchaser within 180 days of the date of the final execution of the executory contract." Tex. Prop. Code.

28. Here, the contract was effective September 20, 2021, the "Effective Date", being the date of final acceptance by both parties. See Exhibit F. The contract required a closing just 42 days later, on or before November 1, 2021. It also required the seller to execute and deliver a general warranty deed conveying title to the property to buyer. See Exhibit F. This transaction does not contemplate an executory contract of conveyance, and neither Section 5.085 or Section 5.086 have any applicability to this transaction.

29. Defendant Andrson is entitled to summary judgment on plaintiffs' claims for violations of the Texas Deceptive Trade Practices Act because the defendants are not required to give an equitable interest disclosure in a non-executory, typical real estate contract.

> II. *Defendant Anderson is entitled to summary judgment on plaintiffs' claims for violations of the Texas Deceptive Trade Practices Act because Defendant Anderson's alleged actions or omissions were not a producing cause of plaintiffs' injuries.*

30. Causation is a necessary element of a claim under the DTPA, and the proper causation standard is "producing cause." *Metro Allied Ins. Agency, Inc.* v. *Lin*, 304 S.W.3d 830, 834 (Tex. 2009). Thus, a plaintiff must show that the defendant's malfeasance was the "producing cause" of the injuries sustained. *Id*. A "producing cause" requires that acts be both the cause-in-fact and a substantial factor in causing injuries and, thus, refers to an efficient, exciting, or contributing cause which, in the natural sequence of events, produces injuries or damages. *Id*. Deceptive actions must

have been a substantial factor in bringing about the plaintiffs' injuries in order to be considered a "producing cause" for DTPA purposes. *Id*. The first component of producing-cause analysis is a purely fact-based examination, considering whether, but for the defendant's conduct, the plaintiff's injuries would not have occurred. See *Prudential Ins. Co.*, 896 S.W.2d 156, 161 (Tex.1995). Under the DTPA, a defendant's acts cannot be the producing cause of a plaintiff's injuries unless the injuries flowed from the defendant's misconduct in connection with a consumer transaction. The producing-cause analysis further includes an inquiry into whether the defendants' conduct was the "legal cause" of the plaintiffs' injuries; that is, whether it was such a substantial factor in causing the plaintiffs' injuries that liability should be imposed. See *Prudential*, 896 S.W.2d at 161. See generally *Union Pump Co.* v. *Allbritton*, 898 S.W.2d 773, 779–84 (Tex.1995) (Cornyn, J., concurring). Policy-based considerations and "common-sense notions of responsibility" should guide the determination of whether the causal connection between the defendant's acts and the plaintiffs' injuries merits the imposition of DTPA liability. *Amstadt* v. *U.S. Brass Corp.*, 919 S.W.2d 644, 655 (Tex. 1996) (citing William Powers, Jr., Texas Products Liability Law § 6.022, at 6–4, 6–20 (2d ed. 1992) (emphasis added).

31.     The facts demonstrate that the defendants never advised or advertised to the plaintiffs that they were conveying water rights or that plaintiffs could dig a well on the Property. See Exhibits K, M, and N. Defendant LPG had the Property listed on Zillow and the listing disclosed that "public water [was] needed" and that each buyer would be responsible for "doing your own homework on all facts" and confirming utilities and restrictions. See Exhibit D. The Zillow listing explicitly places any and all viewers – especially the Plaintiffs – on notice that the Defendants were out of state investors and made zero guarantees to the accuracy of the property description. *Id*. The Zillow listing further advised that there was no guarantee as to the accuracy of information

and that all "known facts and information [in the listing] would be provided by the seller [(Richard Villafana)] and the county data". *Id*. Plaintiff Mulvey researched the title history of the Property before entering into the Contract with Defendant LPG, and was aware of the reservation as to water rights. See Exhibits E, G, and L. On September 22, 2021, Plaintiff Aaron Mulvey emailed the property owners association. See Exhibit L. In that email, Plaintiff Aaron Mulvey didn't state that he was told he was being conveyed water rights, but rather that his interpretation of the Contract was that the "water rights" were "not being reserved" and thus being conveyed to Plaintiff Aaron Mulvey. *Id*. The facts further demonstrate that Defendant LPG had the Property listed on Zillow and that the listing disclosed that the seller was an "[o]ut of state investor" (it is undisputed that Defendant LPG is a Delaware incorporated limited liability company, headquartered in Florida). See Exhibit D. On September 15, 2021, Defendant Anderson spoke to plaintiffs appointed agent and real estate broker Ric Shanahan and informed him that Defendant LPG was not currently the owner of record, and that LPG was in the process of completing the purchase from the owner of record. *See* Exhibit K. Defendant Anderson also informed Ric Shanahan that the transaction between Defendant LPG and Richard Villafana was not an assignment, but an option to purchase, and that Defendant LPG buys and sells the property and pay closing costs twice. *Id*. Because of this conversation, Ric Shanahan prepared the contract to name "Liquid Property Group LLC" as the seller on the contract. See Exhibit F. Plaintiff Aaron Mulvey texted Defendant Anderson on September 21, 2021 acknowledging his receipt of a copy of the contract with Defendant LPG named as the seller, even though facts show that Plaintiff Mulvey had begun researching the Property beforehand. See Exhibit E.

32. Even if Defendant Anderson had stated that plaintiffs could "dig a well", such statement is too remotely connected with the plaintiffs' injury to constitute legal causation. By Plaintiff Aaron

Mulvey's own admission, his interpretation of the contract was that the "water rights" were "not being reserved" and thus being conveyed to Plaintiff Aaron Mulvey. *See* Exhibit L. Plaintiff Aaron Mulvey would have moved to Bulverde, Texas based on his own interpretation of the contract and not Defendant Anderson's alleged remarks about digging a well. Plaintiffs failed in their responsibility to do due diligence, moved their family to Bulverde, Texas, waived their objections to the title defects, and then sued the defendants.

33. As such, Defendant Anderson is entitled to summary judgment on plaintiffs' claims for violations of the Texas Deceptive Trade Practices Act because the defendants' alleged actions or omissions were not a producing cause of plaintiffs' injuries.

> III. *Defendant Anderson is entitled to summary judgment on Plaintiffs' claims for violations of the Texas Deceptive Trade Practices Act because Defendant Anderson's alleged actions or omissions are not actionable under the Act.*

34. A mere breach of contract is not actionable under the DTPA. *Crawford* v. *Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex.1996). In distinguishing between a mere breach of contract claim and a DTPA violation, the distinction properly lies when an alternative interpretation of the contract is asserted, and the dispute arises out of the performance of the contract. *Munawar* v. *Cadle Co.*, 2 S.W.3d 12, 18–19 (Tex. App. 1999) (citing *Quitta* v. *Fossati*, 808 S.W.2d 636, 644 (Tex.App.—Corpus Christi 1991, writ denied).

35. Plaintiffs' legal claims are governed by traditional contract principles, as plaintiffs are clearly relying on their interpretation of the contract and defendants' representation that they were relying on information provided by Richard Villafana. Any alleged prior inconsistent or contemporaneous verbal agreements are barred by the statute of frauds and the parol evidence rule.

36. In such a case as this, defendants have not violated the DTPA and the legal rights of the parties are governed by traditional contract principles. Defendant Anderson is entitled to summary

judgment on plaintiffs' claims for violations of the Texas Deceptive Trade Practices Act because Defendant Anderson's alleged actions or omissions are not actionable under the Act.

> D. *Defendant Anderson is entitled to summary judgment on plaintiffs' claims for negligent misrepresentation because the plaintiffs cannot raise a material fact dispute as to the elements of justifiable reliance.*

37. Plaintiff must prove the following essential elements to support a claim for negligent misrepresentation against Defendant Anderson: "(1) representation in the course of its business or in a transaction in which it has a pecuniary interest; (2) supplying of false information for the guidance of others in their business; and (3) failure to exercise reasonable care or competence in obtaining or communicating that information, and a pecuniary loss sustained due to justifiable reliance on the representation." *JPMorgan Chase Bank, N.A.* v. *Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018). Because plaintiff cannot raise a material fact dispute on the element of justifiable reliance, defendant is entitled to summary judgment as a matter of law.

38. Plaintiffs are sophisticated attorneys represented by a seasoned realtor. Being in that superior position, they cannot now claim, in light of the Zillow listing and surrounding facts, that they justifiably relied on Defendant Anderson's alleged representations. The Zillow listing provided "red flags" indicating that reliance on any alleged statement by Defendant Anderson was unwarranted. Furthermore, plaintiffs' knowledge, experience, and background warranted an investigation into any representations. Instead, plaintiffs failed to exercise such diligence and even admitted that the status of the groundwater was a "knowable fact". Paragraph 29, Page 8, ECF 33. The only misrepresentation in this matter are the Complaints submitted by the plaintiffs. Defendant Tina Anderson cannot induce a potential buyer to buy property "with water rights" when the listing states, "public water…needed", "I DO NOT GUARANTEE THE ACCURACY OF THE

INFORMATION", and "PLEASE BE SURE TO DO YOUR OWN HOMEWORK ON EACH LISTING AND MAKE SURE THE LAND SUITS YOUR NEEDS". See Exhibit D.

39. Because plaintiffs cannot raise a material fact dispute on the element of justifiable reliance, Defendant Anderson is entitled to summary judgment as a matter of law.

### III.   ATTORNEY FEES

40. Defendant Anderson is entitled to attorney fees incurred in defending this suit. Exhibit F, ¶ 17. The affidavit of defendants' attorney will be delivered at a later time to establish the amount that Defendant Anderson is entitled to attorney fees as a matter of law.

### IV.   CONCLUSION

41. Plaintiffs can procure no evidence that Defendant Anderson violated the Texas Deceptive Trade Practices Act, committed fraud or negligent misrepresentation.

### V.   PRAYER

42. For these reasons, Defendant Anderson asks the Court to grant this motion for summary judgment, deny plaintiffs' claims, grant Defendant Anderson summary judgment on its claim for breach of contract, enforce the contract, and award Defendant Anderson with its reasonable and necessary attorney fees in defending this case.

Respectfully submitted,

Jones Property Law, PLLC
1910 Pacific Avenue, Suite 6030
Dallas, Texas   75201
Telephone: (214) 932-9106

By:   */s/ Dakota J. Wrinkle*
Dakota J. Wrinkle
State Bar No. 24118592
dakota@jonespropertylaw.com
Attorney for Defendants

        Bayne, Snell & Krause
        1250 N.E. Loop 410, Suite 725
        San Antonio, Texas   78209
        Telephone: (210) 824-3278
        Telecopier: (210) 824-3937

        By:  */s/ Barry Snell*
        Barry Snell
        State Bar No. 1878900
        bsnell@bsklaw.com
        Attorney for Defendan

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

    Ryan C. Reed
    **Pulman, Cappuccio & Pullen, LLP**
    2161 NW Military Highway, Suite 400
    San Antonio, Texas 78213

Furthermore, I have served a true and correct copy of this motion upon each attorney on this day by email.

        Respectfully submitted,

        Dakota J. Wrinkle